UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Priority | ___ |
| Send | ___ |
| Enter | ___ |
| Closed | ___ |
| JS-5/JS-6 | ___ |
| Scan Only | ___ |

**CASE NO.:** <u>CV 8:16-0545 SJO (MRWx)</u>  **DATE:** <u>March 25, 2019</u>

**TITLE:** <u>Nichia Corp. v. VIZIO, Inc.</u>

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                             Not Present
Courtroom Clerk                                              Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                                  Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF'S MOTION IN LIMINE #1** [Docket No. 240]**; ORDER GRANTING-IN-PART PLAINTIFF'S MOTION IN LIMINE #2** [Docket No. 241]**; ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE #3** [Docket No. 242]**; ORDER DENYING DEFENDANT'S MOTION IN LIMINE #1** [Docket No. 253]**; ORDER GRANTING DEFENDANT'S MOTION IN LIMINE #3** [Docket No. 254]**; ORDER DENYING DEFENDANT'S MOTION IN LIMINE #4** [Docket No. 235]**; ORDER GRANTING DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS OF NICHIA'S EXPERT WITNESS JOHN C. JAROSZ** [Docket No. 176]**; ORDER GRANTING-IN-PART PLAINTIFF'S *EX PARTE* APPLICATION** [Docket No. 259]**; ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** [Docket No. 262]

 These matters are before the Court on the following nine motions in limine (together, "Motions"), five filed by Plaintiff Nichia Corp. ("Nichia" or "Plaintiff") and four filed by Defendant VIZIO, Inc. ("VIZIO" or "Defendant"): (1) Plaintiff's Motion in Limine No. 1 to Apply Presumption of Infringement of Claim 4 of the '375 Patent Pursuant to 35 U.S.C. § 295 ("Pl.'s MIL #1"); (2) Plaintiff's Motion in Limine No. 2 to Exclude Reference to *Everlight* ("Pl.'s MIL #2"); (3) Plaintiff's Motion in Limine No. 3 Relating to the Authenticity and Chain of Custody of the Samples of the Accused Products ("Pl.'s MIL #3"); (4) Defendant's Motion in Limine No. 1 to Enforce Collateral Estoppel ("Def.'s MIL #1"); (5) Defendant's Motion in Limine No. 3 to Preclude Argument or Testimony Concerning Non-Instituted IPR Petitions ("Def.'s MIL #3"); (6) Defendant's Motion in Limine No. 4 to Exclude Argument, Testimony, & Evidence Regarding Alleged Praise and Awards that are Unrelated to the Asserted Patents ("Def.'s MIL #4"); (7) Defendant's *Daubert* Motion to Exclude Certain Opinions of Nichia's Expert Witness John C. Jarosz ("*Daubert* Mot."); (8) Plaintiff's *Ex Parte* Application for Relief from VIZIO's Dissemination of Confidential Information to Nichia's Competitor Consultant ("Appl."); and (9) Plaintiff's Motion for Reconsideration of Certain Constructions of the Court's Claim Construction Order ("Mot. For Reconsideration"). The parties filed their respective oppositions and replies for each motion.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

**CASE NO.: <u>CV 8:16-0545 SJO (MRWx)</u>**  **DATE: <u>March 25, 2019</u>**

The Court found these matters suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court: (1) **DENIES** Plaintiff's MIL #1; (2) **DENIES** Plaintiff's MIL #2; (3) **DENIES** Plaintiff's MIL #3; (4) **DENIES** Defendant's MIL #1; (5) **GRANTS** Defendant's MIL #3; (6) **DENIES** Defendant's MIL #4; (7) **GRANTS** Defendant's *Daubert* Motion; (8) **GRANTS-IN-PART** Plaintiff's *Ex Parte* Application; and (9) **DENIES** Plaintiff's Motion for Reconsideration.

I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Nichia initiated the instant action on March 23, 2016, alleging that certain VIZIO televisions (the "Accused Products) infringe four of its patents directed to light emitting diode ("LED") semiconductor chips and phosphor materials that are combined to produce white light. (*See generally* Compl., ECF No. 1.)  These patents include:  (1) U.S. Patent No. 7,901,959 (the "'959 Patent"), entitled "Liquid Crystal Display and Back Light Having a Light Emitting Diode;" (2) U.S. Patent No. 7,915,631 (the "'631 Patent"), entitled "Light Emitting Device and Display;" (3) U.S. Patent No. 8,309,375 (the "'375 Patent"), also entitled "Light Emitting Device and Display;" and (4) U.S. Patent No. 7,855,092 (the "'092 Patent"), entitled "Device or Emitting White-Color Light" (together, the "Asserted Patents").  The Asserted Patents (1) list the same four inventors; (2) share a common specification; and (3) claim priority to the same Japanese patent application, P 09-081010, and the same U.S. Patent Application No. 08/902,725, which issued as U.S. Patent No. 5,998,925 on July 29, 1997 (the "'925 Patent").  (See Compl., Exs. A-D.)

On January 9, 2018, VIZIO requested permission from the Court to file an early motion for summary judgment on the issues of collateral estoppel and invalidity in light of the Federal Circuit's decision in a related case, *Everlight Elecs. Co., Ltd v. Nichia Corp.* ("*Everlight*"), No. 2016-1577, 2018 WL 286119, at *1 (Fed. Cir. Jan. 4, 2018).  The Court granted VIZIO's request on January 23, 2018. (Mot. to File MSJ, ECF No. 87; 1/23/18 Minute Order, ECF No. 92.)  After briefing, the Court ultimately denied this motion for summary judgment, finding that the Federal Circuit's decision in a different litigation involving two of the Asserted Patents "cannot serve as the sole basis for invalidating separate patent claims with limitations that were never addressed or are not substantially similar to the claim limitations at issue in the Everlight action."  (Order Denying Def's Mot. Summary Judgment, ECF No. 105.)

The Court held a claim construction hearing on May 18, 2018.  (Minutes of Markman Hearing, ECF No. 124.)  On May 29, 2018, the Court issued its Order construing the following terms:

| Claim Term | Claim Construction |
|---|---|
| "transparent material" | no construction necessary |
| "the blue color light from said light emitting component and the yellow color light from said phosphor are mixed to make a white color light" | no construction necessary |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

CASE NO.: <u>CV 8:16-0545 SJO (MRWx)</u>　　　　DATE: <u>March 25, 2019</u>

| | |
|---|---|
| "the blue color light and the light from said phosphor being mixed to make the white-color" | |
| "diffuses" | "scatters" |
| "overlap with each other to make a continuous combined spectrum" | "partly extend over each other to make a continuous combined spectrum" |
| "a concentration of said phosphor in the vicinity of said LED chip is larger than a concentration of said phosphor in the vicinity of the surface of said transparent material" | indefinite |
| "desired chromaticity" | no construction necessary |

(Claim Construction Order, ECF No. 127.) Thereafter, on October 26, 2019, Defendant filed a second motion for summary judgment, seeking a finding of non-infringement and invalidity of the '092 and '375 Patents. (Motion for Summary Judgment, ECF No. 179.) The Court granted this motion in part, invalidating the '092 Patent as indefinite, but declining to invalidate the '375 Patent or to find as a matter of law that Defendant had not infringed the '375 Patent. (Order Granting-in-Part and Denying-in-Part Def's Mot. Summary Judgment ("Second MSJ Order"), ECF No. 345.) The Court held a pretrial conference on March 18, 2019, in which it provided tentative orders on several of the parties' trial motions. (Minutes of Pretrial Conference, ECF No. 353.)

II.　　DISCUSSION

　　A.　　<u>Standards for Motions in Limine</u>

Motions in limine are "important tool[s] available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings," *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (9th Cir. 1997), and "[a] party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is actually introduced at trial." *Barnett v. Gamboa,* No. CV 05-01022 BAM, 2013 WL 174077, at *1 (E.D. Cal. Jan. 16, 2013) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). Regardless of a court's initial decision on a motion in limine, however, it may revisit the issue at trial. *See Luce,* 469 U.S. at 41-42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce,* 469 U.S. at 41-42).

///

///

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

CASE NO.: <u>CV 8:16-0545 SJO (MRWx)</u>　　　　DATE: <u>March 25, 2019</u>

  B. <u>The Federal Rules of Evidence</u>

All relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that cannot meet this standard is inadmissible. *See* Fed. R. Evid. 402. Even if relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." *United States v. Abel*, 469 U.S. 45, 54 (1984). Nevertheless, "[i]n making a determination under Rule 403, the balance in close cases is struck in favor of admission" of the evidence. *United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996) (quoting *United States v. Payne*, 805 F.2d 1062, 1066 (D.C. Cir. 1986)) (internal quotation marks omitted).

  C. <u>Plaintiff's MIL #1</u>

Plaintiff's first MIL asks the Court to apply a presumption of infringement of Claim 4 of the '375 Patent pursuant to 35 U.S.C. § 295. Section 295 applies in cases where a product is manufactured abroad and imported into the United States and allows the burden of infringement to be shifted to the defendant upon a showing by the plaintiff that: (1) there is a substantial likelihood that the products were made by the patented process, and (2) that the plaintiff has made "a reasonable effort" to determine the process actually used to produce the accused products. 35 U.S.C. § 295.

Nichia claims that it has made these required showings. It argues that the first prong is met through the efforts of its technical expert, Dr. Wetzel, who analyzed the LEDs from the Accused Products and determined that they appeared to have been manufactured according to the method of claim 4. (Pl.'s MIL #1, at 6-8.) As discussed in the Court's order on summary judgment, Plaintiff's expert was quite thorough in his analysis of the devices and sufficiently established that a majority of the claim limitations were met. (Second MSJ Order, at 12.) The one limitation for which he was unable to provide empirical evidence was the manufacturer's motivation in selecting a particular phosphor content. (Second MSJ Order, at 12.) While Dr. Wetzel testifies that phosphor content is often selected in order to obtain a particular chromaticity, Defendant argues that manufacturers frequently manufacture the LED packages first and then filter the resulting products based on chromaticity. Which method was used here is unclear and is a factual question for the jury. (*See* Second MSJ Order, at 13.) The Court cannot say, however, that there is a "substantial likelihood" that the products were manufactured by an infringing method.

Similarly, the Court finds that Plaintiff has not met the requirements of the second prong of § 295. While examination of the devices by Plaintiff's expert is an important tool in understanding the manufacturing process, so too is seeking information directly from the manufacturers themselves. While such an inquiry is not required, it certainly falls under what can be considered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

CASE NO.: **CV 8:16-0545 SJO (MRWx)**          DATE: **March 25, 2019**

"reasonable" efforts.  Because the Court finds that neither prong of § 295 is met, it declines to shift the burden of infringement to Defendant.  Plaintiff's MIL #1 is **DENIED**.

    D.    Plaintiff's MIL #2 & Defendant's MIL #1

Nichia's second motion in limine and Defendant's first are largely mirror images of one another.  Both seek to determine the admissibility and effect of the *Everlight* decision.  In its motion, Nichia argues that *Everlight* is not relevant at trial for any purposes, while VIZIO responds that it is both admissible and that it should estop certain of the issues from being presented to the jury in the first place.

As to the issue of admissibility, Nichia points to the Court's previous summary judgment orders and contends that, because the patents here are sufficiently different from those at issue in *Everlight* to avoid collateral estoppel, the jury verdict and subsequent Federal Circuit decision are largely irrelevant and unduly prejudicial for all purposes.  VIZIO, in turn, argues that the *Everlight* decision is relevant to defend against Plaintiff's allegations of willful infringement.  The Court agrees.  Because Nichia's willfulness allegations relate to VIZIO's positions and conduct during the litigation, VIZIO's reliance on *Everlight* is a substantial component of its defense.  VIZIO is entitled to present evidence that it acted reasonably and did not act in a "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, [or] flagrant" manner.  The jury's decision in *Everlight* is a significant component of Defendant's position in this matter and directly impacts the reasonableness of its actions.  For this reason, VIZIO is permitted to raise *Everlight* should Plaintiff elect to go forward with its willfulness arguments.

VIZIO also argues that it is entitled to rely on *Everlight* to conclusively establish several of the issues that would otherwise be presented to the jury.  Namely, it argues that it can rely on *Everlight* to establish: (1) the obviousness of combining an indium gallium nitride blue LED chip and blue-to-yellow YAG phosphor to produce white light; (2) the motivation and expectation of success in making that combination; (3) the analogousness of YAG phosphor art to that combination; and (4) the evidence of secondary considerations related to a white LED that uses a blue LED chip in combination with YAG phosphor.  As the Court discussed in its summary judgment orders, however, there is insufficient identify between the claims at issue here and the claims at issue in the *Everlight* matter to support a finding of collateral estoppel.  Moreover, in light of the general verdict form used in that case, it is impossible to determine precisely the prior art relied upon by the jury in reaching its findings.  For this reason, the Court finds it inappropriate to collaterally estop the jury from considering the issues identified by VIZIO.

    E.    Plaintiff's MIL #3

Plaintiff's third MIL relates to the authenticity and chain of custody of the samples of the Accused Products.  It predicts that VIZIO will dispute the authenticity and chain of custody of the samples for three of the accused products, namely the D28h-C1, D28hn-D1, and D32hn-E1.  These three samples were first acquired, disassembled, and tested by Plaintiff in 2016, prior to filing the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| CASE NO.:  <u>CV 8:16-0545 SJO (MRWx)</u> | DATE:  <u>March 25, 2019</u> |

present action.  (Opp'n to Pl.'s MIL #3, at 1.)  Two years later, the same models were shipped to a third-party testing facility to be tested for Nichia's expert.  (Opp'n to Pl.'s MIL #3, at 1.)

Plaintiff blames VIZIO for its inability to acquire new samples for third-party testing, noting that VIZIO stipulated that it would provide representative samples all of the Accused Products, but that it failed to do so.  (Pl.'s MIL #3, at 2-4.)  Were it not for VIZIO's failure to provide new samples, Plaintiff contends that it would not have had to rely on its pre-suit models.  Nichia also contends that there is no genuine dispute regarding the authenticity or chain of custody for the samples, and points to statements by Defendant's expert witness that there was nothing that led him to believe the samples were not genuine Accused Products.  (Pl.'s MIL #3, at 2.)

VIZIO, on the other hand, argues that it is entitled to inquire into the authenticity and chain of custody of samples that were in the possession of Plaintiff for at least two years before arriving at the third-party facility, especially when those samples had been disassembled and reassembled by Plaintiff.  (Opp'n to Pl.'s MIL #3, at 1.)  While the Court agrees that Plaintiff bears the burden of establishing authenticity and chain of custody, it finds no genuine dispute regarding these questions.  Neither Plaintiff's expert, nor either of Defendant's identified any reason to doubt the authenticity of the samples tested by Plaintiff's third-party facility.  (Pl.'s MIL #3, at 6.)  For this reason, the Court **GRANTS** Plaintiff's MIL #3 and will allow evidence regarding the three models to be admitted. Nevertheless, Defendant is free to question witnesses regarding the authenticity or chain of custody of the samples should it so choose.  Such questioning will, however, go to the weight of the evidence, not its admissibility.

    F.    <u>Defendant's MIL #3</u>

Defendant's third MIL seeks to preclude argument or testimony regarding IPR petitions that were not instituted.  On December 30, 2016, VIZIO filed an IPR petition seeking to invalidate the '375 Patent on obviousness grounds.  (Def.'s MIL #3, at 3.)  However, the PTAB ultimately declined to institute that IPR on the grounds that the YAG prior art reference (Pinnow) was "non-analogous" art and that VIZIO had therefore failed to show that a person of ordinary skill in the art would have chosen to combine YAG phosphor with a blue LED to make white light.  (Def.'s MIL #3, at 3.)

Plaintiff argues that it should be allowed to present the PTAB's findings to the jury to "avoid juror confusion regarding whether and how references were considered by the patent office."  (Opp'n to Def.'s MIL #3, at 6.)   It contends that the PTAB's decision counters VIZIO's argument that the examiners missed or were not focused on several of the prior art references during the initial prosecution of the '375 Patent.  (Opp'n to Def.'s MIL #3, at 6-7.)  Nichia believes that "[a]llowing the jury to hear evidence concerning the IPRs and their results will disabuse them of any notion that Baretz (and other references) somehow slipped through unnoticed or were not of record." (Opp'n to Def.'s MIL #3, at 7.)  This, however, is precisely the reason the PTAB decisions should not be presented to the jury.  The conclusions of the PTAB in declining to institute an IPR have minimal, if any, bearing on the factual determinations that the jury must make.  Allowing the jury to review these decisions creates a substantial risk that they may choose to simply adopt those

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

CASE NO.: <u>CV 8:16-0545 SJO (MRWx)</u>        DATE: <u>March 25, 2019</u>

conclusions. Had Congress intended for denials of institutions to have a bearing on later actions, it would have given those decisions preclusive effect. It did not and the law is clear that "[a] non-institution decision . . . is not a 'final written decision'" and is not entitled to preclusive effect. *Judge Med. Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375 (Fed. Cir. 2014). For this reason, Defendant's MIL #3 is **GRANTED**.

      G.     <u>Defendant's MIL #4</u>

Defendant's final MIL asks the Court to preclude any argument, testimony, or evidence related to the 2014 Nobel Prize awarded to a former Nichia employee and other general awards for its work on the "white LED." VIZIO contends that these awards and praise are irrelevant to any issues before the jury and are likely to confuse them. (Def.'s MIL #4, at 1.) As to the Nobel Price won by Dr. Shuji Nakamura for "the invention of blue light-emitting diodes which has enabled bright and energy-saving white light sources," this award was granted for work performed in the early 1990s and Defendant argues that it is not directly relevant to the importance of the patents at issue. (Def.'s MIL #4, at 3.) VIZIO also argues that the other miscellaneous awards for work performed on "white LEDs" are irrelevant because they contain no direct reference the particular inventions at issue in this litigation. (Def.'s MIL #4, at 3-5.) It points to statements made by Nichia's corporate representative in his deposition that he was unaware of any awards that were specifically directed to the '375 Patent specifically. (Def.'s MIL #4, at 5.)

This argument misstates Plaintiff's burden. Plaintiff intends to introduce evidence of these awards as secondary indicia of non-obviousness. When so doing, an expert must establish a nexus between the industry praise and the patented technology. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1350 (Fed. Cir. 2012). The law does not require, however, that such praise be directly linked to a particular patent or product. Indeed, it is rare for any manner of industry recognition to be so specific. Here, the praise recognizes the importance of white LEDs to the industry and acknowledges Nichia as a leader in this endeavor. (Def.'s MIL #4, at 4.) Nichia's industry expert plans to testify about the industry demand for consistency in chromaticity and intends to point to awards Nichia has received for related work. (Opp'n to Def.'s MIL #4, at 6.) The Court finds that there is sufficient nexus between such awards and the work performed by Plaintiff, regardless of whether the awards acknowledge a particular patent or product. For this reason, Defendant's MIL #4 is **DENIED** and Mr. Swenson will be permitted to testify regarding industry praise. Defendant may nevertheless choose to cross-examine him regarding the strength of this nexus, with such questioning going to the weight of his testimony.

///

///

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

CASE NO.: <u>CV 8:16-0545 SJO (MRWx)</u>　　　　　DATE: <u>March 25, 2019</u>

　　　　H.　　Defendant's *Daubert* Motion

VIZIO next asks the Court to preclude Nichia's damages expert, Mr. John C. Jarosz, from testifying that Nichia should recover, as compensatory damages, its costs "for defending the validity challenge to the patents-in-suit at the patent office." VIZIO argues that this is "an end run around the strict requirements for attorney's fees under Section 285 of the Patent Act" and is directly contrary to law. (*Daubert* Mot., at 3.)

In his expert report, Mr. Jarosz states that:

> I have been informed by Counsel that as a result of VIZIO's infringement of Nichia's patents-in-suit by the accused TVs, Nichia initiated this lawsuit. VIZIO then decided to initiate a separate proceeding at the patent office in which it challenged the validity of the patents-in-suit… I understand that the cost to Nichia for defending the validity challenge to the patents-in-suit at the patent office was approximately $800,000…[T]he total damages amount should be adjusted upward by approximately $800,000 to account for this additional damage….

(*Daubert* Mot., Ex. A ("Jarosz Rep.") at 84.) Plaintiff contends that these costs are proper damages under § 284, arguing that this section simply provides that the court should "award the claimant damages adequate to compensate for the infringement . . . in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." (Opp'n to *Daubert* Mot., at 19 (quoting 35 U.S.C. § 284)).

The Court finds that Mr. Jarosz's inclusion of attorneys' fees in his calculated reasonable royalty rate is improper. While decided in a non-IPR context, the Federal Circuit's opinion in *Mahurkar v. C.R. Bard, Inc.* addressed a similar question and is instructive here. 79 F.3d 1572, 1581 (Fed. Cir. 1996). In that case the district court awarded litigation expenses to a prevailing plaintiff as part of its royalty rate and the Federal Circuit reversed, explaining that:

> In sections 284 and 285, the Patent Act sets forth statutory requirements for awards of enhanced damages and attorney fees. The statute bases these awards on clear and convincing proof of willfulness and exceptionality. [Previous cases] at no point suggested enhancement of a compensatory damage award as a substitute for the strict requirements for these statutory provisions.

79 F.3d 1572. The Court here reaches the same conclusion.

"[T]he American Rule is a 'bedrock principle' of this country's jurisprudence." *Nantkwest, Inc. v. Iancu*, 898 F.3d 1177, 1181 (Fed. Cir. 2018)(quoting *Hardt v. Reli-ance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010). "It provides that, in the United States, '[e]ach litigant pays his own attorney's fees, win or lose." *Id.* (quoting *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158, 2164 (2015). "The American Rule may only be displaced by an express grant from Congress." *Id.* The statute at question here, 35 U.S.C. § 284, contains no such express grant from

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

**CASE NO.: <u>CV 8:16-0545 SJO (MRWx)</u>**  **DATE: <u>March 25, 2019</u>**

Congress. Instead, Congress has provided for attorneys' fees only in "exceptional cases." 35 U.S.C. § 285. To the extent that Plaintiff believes it is entitled to recover its attorneys' fees, it cannot do so simply by lumping it into its compensatory damages, but must instead meet the more stringent requirements of 35 U.S.C. § 285. For this reason, Defendant's *Daubert* Motion is granted.

> I. <u>Plaintiff's *Ex Parte* Application</u>

In its *Ex Parte* Application Relief from VIZIO's dissemination of Confidential Information, Plaintiff contends that VIZIO's new technical expert, Dr. Robert F. Karlicek, Jr. has a previously undisclosed consulting relationship with one of Nichia's major competitors, Seoul Semiconductor. (Appl., at 1.) As a result of VIZIO's failure to disclose this relationship, Dr. Karliceck has reviewed and relied upon Nichia's confidential information. (Appl., at 1.)

VIZIO argues that Dr. Karlicek is not currently consulting for Seoul Semiconductor and has not done so since mid-2017, more than a year before he was hired for this case. (Opp'n to Appl., at 1.) While he performed litigation work for Seoul Semiconductor in 2018, this work was identified in the initial disclosure provided to Nichia. (Opp'n to Appl., at 1.) VIZIO also argues that Nichia has failed to identify any particular materials that Dr. Karlicek has received that would influence his consulting work. (Opp'n to Appl., at 1-2.) Defendant assures that Court that it has engaged in a good faith effort to review the materials Dr. Karlicek received and "determined that none relate to Nichia's current technology or manufacturing processes such that they could possibly influence any potential future technical consulting work (and Dr. Karlicek has no current plans to engage in such work)." (Opp'n to Appl., at 1-2.)

While the Court is highly concerned that Dr. Karlicek's consulting for a direct competitor of Nichia was not identified and disclosed prior to his engagement as a technical expert, Nichia itself recognizes that it is impossible to "unring the bell" on the eve of trial. (Appl., at 1.) It is important to reach a resolution that allows the matter to go forward in the most streamlined manner possible. Nichia asks that the Court require the following:

1. Dr. Karlicek signs an additional confidentiality and non-disclosure agreement specific to Seoul Semiconductor
2. VIZIO refrains from providing any additional Nichia confidential information to Dr. Karlicek and provides Nichia an itemized list of all documents designated by Nichia as highly confidential that were provided to Dr. Karlicek, including for each document the name of the document and, if applicable, Bates numbers;
3. With the exception of the deposition transcripts of the Nichia inventors and their related laboratory notebooks, Dr. Kalicek immediately returns to VIZIO or destroys the Nichia confidential materials in his possession and certifies that his return or destruction has been completed; and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

**CASE NO.: <u>CV 8:16-0545 SJO (MRWx)</u>**         **DATE: <u>March 25, 2019</u>**

> 4. Dr. Karlicek provides no testimony at trial that uses, discloses, or relies on Nichia's confidential information, with the exception of the deposition transcripts of the Nichia inventors or their related laboratory notebooks.

At the pretrial conference, the Court proposed requiring Dr. Karlicek to sign an additional confidentiality agreement specific to Seoul Semiconductor and requiring that Dr. Karlicek identify all confidential information he had received and returning these documents at the conclusion of the trial. (Transcript for Proceedings held on 3/18/19 ("Transcript"), at 24:15-25:2.) Plaintiff's counsel agreed that this was an acceptable solution. (Transcript, at 26:12-13.)

Accordingly, the Court finds that Dr. Karlicek must sign an additional, Seoul Semiconductor-specific confidentiality agreement, that he must provide a list of all confidential documents received from defense counsel, and that he must return any confidential documents in his possession at the close of trial.

J.  <u>Plaintiff's Motion for Reconsideration</u>

Finally, Plaintiff asks the Court to vacate its prior constructions and indefiniteness ruling and to adopt Nichia's constructions regarding the following claim terms:

| Claim Term | Court's Construction | Proposed Construction |
|---|---|---|
| "transparent material" | no construction necessary | "unitary transparent material" |
| "a concentration of said phosphor in the vicinity of said LED chip is larger than a concentration of said phosphor in the vicinity of the surface of said transparent material" | indefinite | Plan and ordinary meaning or, should the Court find construction necessary, "within the transparent material, the concentration of phosphor is larger near the LED chip than near the surface of the transparent material" |
| "diffuses" | "scatters" | "scatters by reflection off of phosphor particles" |

Nichia's argument for its newly proposed constructions centers on the testimony of Defendant's technical experts retained after claim construction, Dr. Mark Butterworth and Dr. Robert F. Karlicek, Jr. (Mot. for Reconsideration, at 1.) It notes that the opinions of these experts were not available at the time the Court issued its claim construction ruling and contends that the opinions contain statements inconsistent with VIZIO's positions during construction. (Mot. for Reconsideration, at 1.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

CASE NO.: <u>CV 8:16-0545 SJO (MRWx)</u>          DATE: <u>March 25, 2019</u>

In its claim construction order, the Court gave the term "transparent material" its plain and ordinary meaning rather than Plaintiff's proposed limitation that it must be a "unitary" transparent material.  (Claim Construction Order, at 15.)  In so concluding, the Court relied exclusively on the intrinsic record, finding no ambiguity that would require expert input.  (Claim Construction Order, at 13-15.)  Now, however, Plaintiff asks the Court to look beyond the patent itself and examine POSITA testimony.  Specifically, it argues that Both Mr. Butterworth and Dr. Karlicek have testified that Nichia's white LED has two distinct transparent layers—one containing phosphor and a clear layer on top of the chip—and that it would not make sense to treat these two layers as the same material.  (Mot. for Reconsideration, at 5-6.)  This testimony, however, is irrelevant to the question of how the term "transparent material" would be understood in the context of the patent itself and is instead based on the experts' understanding of Nichia's own devices.

The Court declines to look beyond the instrinsic record when there is no need to do so, and will not read limitations from a purported embodiment into the claims of the patent itself.  For this reason, Plaintiff's Motion is **DENIED** as to the term "transparent material."  Because Plaintiff's argument for reconsideration of its second disputed term depends on the Court reconstruing "transparent material," Plaintiff's motion is also **DENIED** as to "concentration of said phosphor in the vicinity of said LED chip is larger than said phosphor in the vicinity of the surface of said transparent material."

Plaintiff's final disputed term is "diffuses," which it asks the Court to limit solely to light scattered by **reflection** off of phosphor particles.  Again, this argument relies on the testimony of Defendant's infringement and invalidity experts regarding their understanding of Nichia's devices.  Specifically, Plaintiff points to Mr. Butterworth's statement that "there is both reflection and refraction that happens at the surface of the phosphor particles that lead to a phenomena that could be said to be scattering." (Mot. for Reconsideration, at 13.)  This statement runs counter to Plaintiff's argument, however, as Mr. Butterworth testified that "both reflection *and refraction*" were occurring.  Likewise, while he characterizes reflection, refraction, absorption, and re-emission as "four separate things," he does not testify that LEDs use only one form of these scattering methods.  For this reason and because the Court again declines to read limitations from Nichia's devices into the claims of the patent itself, Plaintiff's Motion is **DENIED**.

III.     <u>RULING</u>

For the foregoing reasons, the Court: (1) **DENIES** Plaintiff's MIL #1; (2) **DENIES** Plaintiff's MIL #2; (3) **DENIES** Plaintiff's MIL #3; (4) **DENIES** Defendant's MIL #1; (5) **GRANTS** Defendant's MIL #3; (6) **DENIES** Defendant's MIL #4; (7) **GRANTS** Defendant's *Daubert* Motion; (8) **GRANTS-IN-PART** Plaintiff's *Ex Parte* Application; and (9) **DENIES** Plaintiff's Motion for Reconsideration.

IT IS SO ORDERED.